UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-3352-WCT

IN RE SEALED CRIMINAL COMPLAINT
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?   _____ Yes   _X_ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?   _____ Yes   _X_ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: _____
RYAN DWIGHT O'QUINN
Assistant United States Attorney
Fla. Bar 0513857
99 N.E. 4th Street, # 400
Miami, FL 33132-2111
(305) 961-9145
E-mail: Ryan.OQuinn@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| ANTHONY MELLONE | ) | Case No. 10-3352-WCT |
| and | ) | |
| ALEX PARSINIA | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __10/2008 through 3/2009__ in the county of __Broward__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 15, United States Code, Sections 78j(b) and 78ff(a); and Title 17, Code of Federal Regulations, Section 240.10b-5 | Securities Fraud |

This criminal complaint is based on these facts:
See Attached Affidavit

☒ Continued on the attached sheet.

_____
*Complainant's signature*

Timothy J. Wright, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/28/10

_____
*Judge's signature*

City and state: Miami, Florida

William C. Turnoff, US Magistrate Judge
*Printed name and title*

## AGENT AFFIDAVIT

I, Timothy J. Wright, Special Agent of the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and say the following:

### A. Agent Background and Introduction

1. Your affiant has been employed as a Special Agent for the Federal Bureau of Investigation (FBI) since 2005. Your affiant is empowered to conduct criminal investigations, make arrests, and execute search and arrest warrants related to, among other things, corporate offenses including conspiracy, securities fraud, mail fraud, and wire fraud.

2. This Affidavit is being submitted for the limited purpose of establishing probable cause that ANTHONY MELLONE and ALEX PARSINIA each engaged in a scheme and artifice to commit securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a); and Title 17, Code of Federal Regulations, Section 240.10b-5. Your affiant has not included each and every fact known to him concerning this investigation; instead, your affiant has only set forth those facts and circumstances that he believes are necessary to establish probable cause to obtain a criminal complaint.

3. This Affidavit is based upon personal knowledge, information and evidence obtained directly, from other special agents and regulatory officials in the course of this investigation, and reference materials used in the securities industry. The facts set forth herein are based on personal knowledge, observations, and experience, as

well as information gathered from law enforcement agents, banking and financial institutions, and cooperating witnesses.

4. Your affiant submits that this affidavit sets forth sufficient facts to establish probable cause to believe that from in or around October 2008 until in or around March 2009, MELLONE, PARSINIA, and others did knowingly, with specific intent to defraud, violate Title 15, United States Code, Sections 78j(b) and 78ff(a); and Title 17, Code of Federal Regulations, Section 240.10b-5, by engaging in a kickback scheme to misappropriate money from a pension fund.

**B. Summary of the Investigation**

5. Between in or around October 2008 and March 2009, your affiant participated in an undercover investigation operated by the FBI. This investigation focused on fraud committed by individuals associated with publicly traded companies. As part of the investigation, the FBI utilized a cooperating witness (the "CS") and undercover agents, who among other things, posed as representatives of a pension fund (each a "UC").

6. Pink OTC Markets, Inc., informally known as the Pink Sheets, operates Pink Quote, an electronic quotation system that displays quotes from broker dealers for many over-the-counter ("OTC") securities. Market makers and other broker dealers who buy and sell OTC securities can use Pink Quote to publish their bid and ask quotation prices. Generally, the companies quoted in Pink Quote are closely held, extremely small and/or thinly traded. Therefore, the publicly quoted securities of those companies are often the subject of manipulative acts and practices by market participants.

7.  Tri-Star Holdings, Inc. ("TSHL") was a securities issuer with common stock publicly traded in the Pink Sheets. MELLONE was an officer and director of TSHL, who derived a benefit from TSHL's sale of common stock.

8.  Zcom Networks, Inc. ("ZNXT") was a securities issuer with common stock publicly traded in the Pink Sheets. PARSINIA was an officer and director of ZNXT, who derived a benefit from ZNXT's sale of common stock.

9.  Beginning in October 2008, MELLONE participated in a series of meetings and telephone calls to negotiate fraudulent transactions with the CS and two UCs. These meetings and telephone calls, which were consensually recorded, involved a scheme to make undisclosed kickback payments to a pension fund fiduciary[1] to induce the fiduciary to misappropriate money from the pension fund to buy TSHL common stock. In connection with these discussions, MELLONE agreed to pay an illegal kickback equal to forty percent (40%) of the purchase price paid for TSHL common stock.

10. On or about December 5, 2008, MELLONE received twenty thousand dollars ($20,000) that he believed was sent by the pension fund to purchase forty million (40,000,000) shares of TSHL common stock.

11. On or about December 8, 2008, MELLONE kicked back eight thousand dollars ($8,000) of that purchase money to a shell corporation that MELLONE believed was controlled by the pension fund fiduciary (the "Shell Company").

---

[1] In truth and in fact there was no pension fund involved in these transactions.

12. In or around December 2008, MELLONE informed a UC that he knew one or more other individuals that would be interested in participating in similar transactions. Shortly thereafter, MELLONE introduced PARSINIA to the UC. Thereafter, PARSINIA participated in several interstate telephone calls and e-mail communications related to the kickback scheme.

13. Between around January 6, 2009 and around January 8, 2009, PARSINIA participated in three meetings in the Southern District of Florida with MELLONE, the CS, and a UC. During these meetings, which were recorded, PARSINIA and MELLONE discussed potential stock transactions related to ZNXT common stock. At these meetings, PARSINIA agreed to pay a forty percent (40%) kickback payment to the purported pension fund fiduciary to cause the fiduciary to misappropriate pension funds to purchase ZNXT common stock.

14. On or about January 8, 2009, PARSINIA received twenty thousand dollars ($20,000) that he believed was sent by the pension fund to purchase one million six hundred sixty-six thousand six hundred sixty-seven (1,666,667) shares of ZNXT common stock.

15. On or about January 14, 2009, PARSINIA sent a kickback payment of eight thousand dollars ($8,000) to the Shell Company, which PARSINIA also believed was controlled by the pension fund fiduciary. MELLONE subsequently received one thousand dollars ($1,000) of this kickback, as payment for bringing PARSINIA into the scheme.

16. To conceal the fraudulent nature of their respective kickback payments to the Shell Company, MELLONE and PARSINIA each executed false and fraudulent

consulting agreements between their respective public companies and the Shell Company. These consulting agreements gave the false impression that the Shell Company was performing hourly consulting services for TSHL and ZNXT.

17. MELLONE and PARSINIA each used means and instrumentalities of interstate commerce, such as overnight carriers and e-mail communications, to execute the securities fraud scheme.

WHEREFORE, as a result of the above, your affiant respectfully submits that there is probable cause that ANTHONY MELLONE and ALEX PARSINIA committed securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a); and Title 17, Code of Federal Regulations, Section 240.10b-5.

FURTHER AFFIANT SAYETH NAUGHT

TIMOTHY J. WRIGHT
Special Agent
Federal Bureau of Investigation

Sworn to and subscribed before me this ____ day of September, 2010.

**WILLIAM C. TURNOFF**
**United States Magistrate Judge**

5